Appellant, Marcus A. Fuller, appeals the judgments of the Court of Common Pleas of Seneca County, denying his motion to suppress evidence. For the reasons expressed in the following opinion, we affirm the judgment of the trial court.
This matter stems from the trial court's denial of Appellant's motion to suppress evidence discovered in three warrantless searches of the home in which he, his brother, Matthew Fuller, and their mother, Sharon Fuller, resided. Ms. Fuller was the owner of the home, which she was purchasing under a land sale contract. Two of the searches were conducted on August 13, 1998, and one was conducted on December 11, 1998.
On August 13, 1998, Ms. Fuller was pulled over and cited for driving without a valid operator's license, after Fostoria police officers received a tip from Detective, Jeff Huffman, and Seneca County Probation Officer, Brian Kern, who saw Ms. Fuller driving in the area. Shortly thereafter, Huffman and Kern arrived at the scene, at which time Ms. Fuller verbally consented to a search of her vehicle. During the search, police discovered a small amount of marijuana. Subsequently, Ms. Fuller was transported to the Fostoria Police Station where her probation officer, Douglas Pummel, was awaiting her arrival.
After Ms. Fuller arrived at the police station, Mr. Pummel asked her for permission to search her residence. In response, Ms. Fuller signed a written consent form, allowing officers to conduct the search. Detective Huffman, Kern, and Pummel then accompanied Ms. Fuller to her home, where they encountered Appellant and his brother. Subsequently, a search was conducted of both the inside, and backyard of the residence. Ms. Fuller's backyard is surrounded by a six foot high wooden fence and is accessible only from inside the house. Inside the backyard are a wooden shed and two doghouses, one of which is additionally surrounded by a chain link fence. A search of the backyard revealed nothing. However, in the basement of the house, police found some rolling papers, and a small amount of marijuana. Thereafter, the officers left Ms. Fuller's residence without making an arrest.
Upon returning to the police station, the officers received a telephone call from a confidential informant who notified them that they had missed a substantial amount of drugs underneath a doghouse in the backyard of Ms. Fuller's home. Immediately, the officers returned to Ms. Fuller's home, at which time, Ms. Fuller gave them verbal permission to conduct a second search.
The officers focused their attention on the doghouse that was enclosed by a chain link fence. After observing a container underneath the doghouse, the officers asked Ms. Fuller to remove several dogs from the area so that they could resume their search. At the officers' request, Ms. Fuller instructed Appellant to remove the dogs. The officers then retrieved the container and found powder cocaine, crack cocaine, and a loaded handgun inside. As a result, Ms. Fuller was placed under arrest and taken to the Fostoria Police Station.
Several days later, on August 17, 1998, Appellant, his brother, and a friend named Daryl Fields, appeared voluntarily at the Seneca County Adult Probation Department to speak with Mr. Pummel. At that time, each individual was given Miranda warnings and told that he was free to leave at any time. During questioning, Appellant, both verbally and in writing, admitted to possessing approximately eleven ounces of powder cocaine, a portion of crack cocaine, and the handgun. After the interview, Appellant agreed to appear the following day at the Fostoria Police Station for further questioning. On August 18, 1998, Appellant appeared and made voluntary statements consistent with those made the previous day.
Approximately four months later, on December 9, 1998, an indictment was returned, charging Appellant with two counts of possession of a controlled substance in violation of R.C.2925.11(C)(4)(c), and one count of receiving stolen property in violation of R.C. 2913.51. The Seneca County Grand Jury also found that Appellant had a firearm under his control while committing the offenses in violation of R.C. 2941.141. In addition, the Grand Jury determined that Appellant possessed $1,442.65, which was subject to forfeiture pursuant to R.C.2925.42(A)(1).
On December 11, 1998, Fostoria police officers returned to Ms. Fuller's home to serve the indictments. At that time, Appellant and his brother were placed under arrest. During a search of Appellant's person, officers found crack cocaine. Thereafter, upon further request, Ms. Fuller signed a written consent form permitting officers to search her home. Officers then discovered cocaine hidden in a sock in the basement of the home, and cocaine in the backyard underneath a doghouse not surrounded by the chain link fence.
On December 23, 1998, the Seneca County Grand Jury returned a second indictment, stemming from the incidents that occurred on December 11, 1998. The second indictment charged Appellant with possession of a controlled substance in violation of R.C.2925.11(C)(4)(e). In addition, the Grand Jury determined that Appellant possessed $580.00, which was subject to forfeiture pursuant to R.C. 2925.42(A)(1).
Subsequently, Appellant moved the trial court to suppress the evidence, and a hearing was held on February 17, 1999. After hearing testimony, and reviewing all the evidence, the trial court denied Appellant's motion. On May 20, 1999, Appellant pleaded no contest to, and was found guilty of possession of drugs in violation of 2925.11(C)(4)(e). In exchange for Appellant's no contest plea, the other charges were dismissed.
Appellant now appeals the judgment of the trial court, assigning one error for our review.
 Assignment of Error No. 1 The lower court reversibly erred, to the harmful prejudice of the Defendant/Appellant, when said court denied the Defendant/ Appellant's fundamental rights to be secure from unreasonable, warrantless searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States, applicable to the states through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.
The crux of Appellant's argument is that the trial court erred in denying his motion to suppress contraband discovered in a search of his mother's home on August 13, 1998, and again on December 11, 1998.
"When reviewing the trial court's decision regarding a motion to suppress, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence."State v. Powers (Oct. 16, 1998), Marion App. Nos. 9-98-08, 9-98-09, 9-98-10, unreported.
The purpose of the Fourth Amendment of the United States Constitution, and Article I, Section 14 of the Ohio Constitution are to protect individuals from unreasonable searches and seizures. Id. In addition, the Ohio Supreme Court has stated:
 The cardinal principle of the Fourth Amendment is that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.'
State v. Welch (1985), 18 Ohio St.3d 88, 91, quoting Katz v.United States (1967), 389 U.S. 347, 357.
Appellant first argues that the two initial searches conducted on August 13, 1998 were unreasonable because there were no exigent circumstances to circumvent the fact that they took place at nighttime and without a warrant.
In this case, the record is uncontroverted that Ms. Fuller consented to both searches of her residence on August 13, 1998. The record demonstrates that prior to the first search, officers obtained a written consent form signed by Ms. Fuller, permitting them to search the residence. In addition, the record demonstrates that when officers returned that day to search the residence for the second time, they obtained verbal consent from Ms. Fuller.
It is well established in Ohio that a parent who owns or controls a residence in which a child resides may consent to a search of the residence, even though it may produce incriminating evidence against the child. State v. McCarthy (1971), 26 Ohio St.2d 87; State v. Carder (1966), 9 Ohio St.2d 1. This is true even if the child is no longer a minor. State v. Reynolds (1998),80 Ohio St.3d 670.
Therefore, it is of no consequence whether exigent circumstances exist when an individual consents to a search of his or her residence. See State v. Penn (1991), 61 Ohio St.3d 720;State v. Masten (Sept. 29, 1989), Hancock App. No. 5-88-7, unreported.
Additionally, Appellant argues that officers exceeded the scope of their authority when they searched the backyard. Appellant suggests that because the doghouses were approximately fifty feet from the back of the house, they were beyond the scope of the search Ms. Fuller consented to.
The scope of an individual's consent is measured by a standard of objective reasonableness. Florida v. Jimeno (1991),500 U.S. 248. Regardless of the location of the doghouses, the fact that the backyard was completely enclosed by a fence, and the fact that Ms. Fuller did not limit the scope of the search, would lead an objectively reasonable person to conclude that the scope of the search included the entire house, and the backyard. If Ms. Fuller wished to limit the scope of either search, she could have done so when the officers sought permission. There is nothing in the record to indicate that anyone limited the authority of either search.
Appellant next argues that his mother did not have common authority over either of the dogs in the doghouse and, therefore, did not have authority to consent to the search.
As stated above, parents may consent to a search of premises that they own. See Reynolds, 80 Ohio St.3d 670; McCarthy, 26 Ohio St.2d 87; and Carder, 9 Ohio St.2d 1. The record indicates that Ms. Fuller was purchasing the property under a land sale contract, and was therefore the equitable owner of the property. Furthermore, there is no evidence to indicate that Appellant was paying rent, which may have given him a proprietary interest in the property. See Reynolds, 80 Ohio St.3d 670, at 675. Therefore, Appellant's argument is not well taken.
Appellant also argues that all subsequent incriminating statements he made in the absence of counsel violated his Fifth
and Sixth Amendment rights. In addition, he argues that these statements, and the subsequent search on December 11, 1998, violated his Fourth Amendment rights, because they were obtained as a result of the initial warrantless searches on August 13, 1998. Therefore, he argues that they should be excluded because they are fruits of the poisonous tree. See Wong Sun v.United States (1963), 371 U.S. 471.
Initially, we reiterate that the two searches conducted on August 13, 1998, were valid. Therefore, the subsequent statements made by Appellant, and the subsequent search on December 11, 1998 do not violate Wong Sun, and are not, therefore, fruit of the poisonous tree. Furthermore, the drugs found on Appellant's person are admissible as a search incident to a lawful arrest. See Chimel v. California (1969), 395 U.S. 752; State v. Brown
(1992), 63 Ohio St.3d 349.
Likewise, the incriminating statements made by Appellant did not violate his Fifth or Sixth Amendment right to counsel. The law is clear in Ohio that an individual's Fifth Amendment right to counsel attaches when that person is in custody. State v. Broom
(1988), 40 Ohio St.3d 277, 285. An individual's Sixth Amendment right to counsel does not attach until adversarial proceedings have been commenced with respect to a particular incident. Id.
The record demonstrates that when Appellant made the incriminating statements on August 17, 1998, and August 18, 1998, he was neither under arrest, nor in custody at either time. Further, adversarial proceedings had not commenced at that time. In fact, the record demonstrates that Appellant spoke with officers voluntarily, and there is no evidence of duress or coercion. Additionally, the record demonstrates that officers informed Appellant of his Miranda rights, and told him that he was free to leave if he wished.
Therefore, we find that there is competent, credible evidence in the record to support the trial court's holding that Ms. Fuller's consent was given knowingly, voluntarily, and without coercion or duress prior to each search. There is also competent, credible evidence in the record to support the trial court's holding that Appellant's statements to the police were given voluntarily during a non-custodial setting. Therefore, we hold that the trial court did not err in denying Appellant's motion to suppress.
Accordingly, Appellant's assignment of error is not well taken and is therefore overruled.
Having found no error prejudicial to Appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
BRYANT, P.J., and HADLEY, J., concur.