## NEAL WINFIELD v. STATE.

No. A-6735. Opinion Filed August 31, 1929.
(280 Pac. 630.)

Scott Ferris and King & Crawford, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, Neal Winfield, hereinafter called defendant, was convicted in the district court of Pontotoc county of the crime of receiving stolen property and sentenced to serve a term of one year's imprisonment in the state penitentiary.

The facts are substantially as follows: Winfield was the owner and operator of a restaurant in the city of Ada, on West Main street. The evidence shows that on the date alleged in the information he purchased four buckets of lard from a couple of boys of the age of 15 years. Further, the record discloses that Winfield had been in the habit of buying lard and other merchandise from several boys of about that age along about the time he purchased this particular lard from Woodrow Jones and Coyte Morris. The evidence also shows that this lard was stolen from the store of one Sadler, which was located on Main street, the same street on which Winfield had his restaurant, and about two blocks east of Winfield's place. The evidence on the part of the state also discloses that Winfield knew this lard was stolen at the time he bought it, and that he paid only about 60 per cent. of its fair cash value at the time he purchased it from these boys.

Winfield testified in his own behalf, and admitted that he purchased four buckets of lard that day. He testified that he bought this lard from the Jones boy and that he paid him $1.25 a bucket for it, instead of 75 cents, as testified to by the Jones boy, and that $1.25 was the fair cash value of the lard. Winfield also testified that the Jones boy told him that his father had gone to Texas and had asked him to sell this lard for him when he was gone and to take the money and buy some school books with it. Winfield denied that he had purchased any lard

before from the Jones boy, or from anybody else, and also, of course, denied that he had any knowledge that this particular lard was stolen at the time he purchased it.

The defendant first complains that the witness Woodrow Jones, if anything, was an accomplice of the defendant, and that his evidence is not corroborated, and that therefore there was not sufficient evidence to support the verdict of the jury.

In the case of Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676, this court said:

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission.

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

"It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof."

There is some evidence in this case to the effect that the defendant probably knew the witness Jones was going to steal some lard and bring it to him before this lard was brought to him, but there is no evidence to show that defendant knew that Jones was going to steal this particular lard, nor did Jones assist the defendant in the concealment of the lard after the defendant had purchased

the lard from Jones. In other words, Jones did nothing to aid and assist defendant in the commission of the offense of receiving the stolen property. All Jones did was to steal the property and to sell it to defendant. Defendant was merely a fence for Jones in the receiving of stolen property, and had been for some time previous. Defendant, no doubt, by acting as a fence encouraged Jones and other boys of his age to commit larcenies that they otherwise would not have committed, but the only encouragement defendant gave to these boys, or to Jones in this instance, was to agree to purchase the stolen property. Such evidence is insufficient to make defendant an active aider and abetter in the larceny to such an extent that he could have been convicted of the crime of larceny. Nor does the evidence in this case make Jones an aider or abetter with defendant in the crime of receiving this stolen property to the extent that he could be convicted of that offense.

Under the evidence in this case it was not necessary for the state to corroborate the testimony of Jones as to the guilt of defendant in the crime of receiving this stolen property. The defendant, however, is mistaken in his claim that there is no evidence in the record to corroborate the witness Jones. Jones was corroborated by the fact that the goods were stolen at the time and from the persons he testified they were stolen from. Jones is further corroborated by the admission of the defendant that he bought four buckets of lard from the witness Jones on the same day and shortly after Jones testified he stole the lard. Jones is further corroborated by the fact that the business the defendant was engaged in caused him to use a large amount of the kind of goods stolen by Jones.

In the case of Butcher v. State, 44 Okla. Cr. 124, 279 Pac. 973, this court said:

"The defendant further complains that he could not be convicted of receiving stolen property on proof of a conspiracy or agreement to steal property generally. It is a sufficient answer to say that the evidence here relied upon by the state for a conviction is that defendant's part of the unlawful agreement was to buy and receive the property provided the other parties stole it.

"In the case of Price v. State, 9 Okla. Cr. 370-373, 131 Pac. 1102, 1106, this court said: 'It is urged on behalf of appellant that the trial court erred in not advising the jury to acquit appellant upon the ground that the evidence showed that appellant was guilty of the crime of grand larceny, in that he was a party to the original taking. We believe that appellant might have been convicted for grand larceny on the evidence in this case, but it does not necessarily follow that the evidence does not also sustain a verdict for knowingly receiving stolen property. It is the privilege of the county attorney to charge in an indictment the highest possible offense constituted by any act committed; but, if he sees fit to charge a lower offense which is sustained by the evidence and which calls for the infliction of a less degree of punishment, a defendant cannot be heard to complain that he should have been charged with and convicted of the higher offense included in the same acts, because the error of the county attorney inured to his benefit and he is bound thereby. Howard v. State, 9 Okla. Cr. 337, 131 Pac. 1100; McGill v. State, 6 Okla. Cr. 512, 120 Pac. 297; Anthony v. State, 44 Fla. 2, 32 So. 819; Sisk v. State (Tex. Cr. App.), 42 S. W. 985."

The defendant next contends that the court erred in admitting incompetent evidence against the defendant, which was clearly prejudicial to his substantial rights. This assignment of error relates to the admission in evidence of a confession made by the witness Jones as to his guilt of the larceny of the lard sold to the defendant, because Jones had been promised immunity from prosecution should he testify to the truth against defendant of

receiving stolen property. Under section 21, of article 2 of our Constitution, a person charged with crime shall not be compelled to give evidence which will tend to incriminate him. This was a privilege accorded to Jones, not to the defendant, but by section 27 of article 2, supra, it is specifically provided: "Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the state, shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

Thus it is seen, not only that defendant is not protected under the constitutional provisions above quoted by reason of any confession made by Jones, but, on the contrary, the framers of the Constitution specifically provided that Jones could not claim this privilege against self-incrimination under such circumstances, but where he had testified he would be granted immunity.

It is next contended that the trial court erred in permitting the state to prove the receiving of other stolen property by the defendant from other boys about the same age as Jones, at about the same time he received this stolen property from Jones.

In the case of State v. Rule, 11 Okla. Cr. 237, 144 Pac. 807, it is held, among other things:

"Evidence of other offenses similar to that charged is relevant and admissible, when it tends to prove some element of the one charged, as when it shows or tends to

show guilty knowledge or intent in the commission of the offense charged." Jackson v. State, 42 Okla. Cr. 86, 274 Pac. 696; Oldham v. State, 42 Okla. Cr. 209, 275 Pac. 383; Oldham v. State, 43 Okla. Cr. 314, 278 Pac. 663.

The evidence of the commission of other offenses of receiving stolen property herein referred to was permitted to go to the jury on the question of the defendant's guilty knowledge and intent in the commission of this offense.

In 2 Wharton's Criminal Law (11th Ed.) § 1229, it is said:

"Guilty knowledge, involving guilty intent, on the part of the defendant, is essential to the constitution of the offense. This may be shown either by the evidence of the principal felon, supported by corroborating facts, or inductively by proving that the defendant bought them very much under their value, or denied their being in his possession, aided in concealing the stolen property, or the like. To show a guilty knowledge, other instances of receiving may be proved."

Evidence of the reception by the defendant of other stolen property from other boys of a similar age as Jones, and at about the same time defendant received this stolen property from Jones, was competent and relevant on the question of guilty knowledge and intent as to the receiving of this particular stolen property. The evidence in this case shows that this defendant has been engaged in the practice of encouraging young boys to commit numerous larcenies in his community by paying them money for the stolen property. The only question in this case is whether or not the defendant knew the goods were stolen at the time he purchased them. Certainly, the defendant would be required to use the circumspection usual with persons in purchasing goods outside of the regular course of trade. Here the defend-

ant purchased this lard at a greatly depreciated price. He bought the stuff from a boy, who would not be likely to be handling such property. The goods were delivered to him at the back door of his place of business, at an hour of the day when it must have been evident to him that the seller was trying to conceal the fact that he had possession of the property.

The evidence being sufficient to support the verdict, and the errors of law complained of being without merit, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.